IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Clarence P. Jacobs, ) | C/A No. 0:10-2764-CMC-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Clarence P. Jacobs ("Jacobs"), brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be reversed.

**ADMINISTRATIVE PROCEEDINGS**

In June 2006, Jacobs applied for DIB, alleging disability beginning November 7, 2005. Jacobs's application was denied initially, but upon reconsideration Jacobs was found to be disabled as of April 24, 2007. Jacobs, still asserting that his disability began on November 7, 2005, requested a hearing before an administrative law judge ("ALJ"). A hearing was held on December 9, 2009, at which Jacobs, who was represented by Jennifer Kellahan, Esquire, appeared and testified. The ALJ issued a decision on January 26, 2010 concluding that Jacobs was disabled as of April 24, 2007, but not disabled before that date. (Tr. 10-18.)

Jacobs was fifty-nine years old at the time of his alleged disability onset date. (Tr. 27.) He has a college education and past relevant work experience as a salesman. (Tr. 165, 170.) Jacobs alleges disability since November 7, 2005 due to arthritis, bulging disk—neck and lumbar, anxiety and depression, hypertension, and sleep apnea. (Tr. 164.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since November 7, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*).
   \* \* \*
3. The claimant has the following severe impairments: osteoarthritis and right shoulder impingement status post arthroscopy (20 CFR 404.1520(c)).
   \* \* \*
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
   \* \* \*
5. After careful consideration of the entire record, I find that prior to April 24, 2007, the date the claimant became disabled, the claimant had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b). Specifically, the claimant was able to lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours in an 8-hour day.
   \* \* \*
6. After careful consideration of the entire record, I find that beginning on April 24, 2007, the claimant is unable to perform even sedentary unskilled work on a regular and continuing basis (8 hours a day, 5 days per week).
   \* \* \*
7. Prior to April 24, 2007, the claimant was capable of performing his past relevant work as a salesman. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
   \* \* \*
8. Beginning on April 24, 2007, the claimant's residual functional capacity has prevented the claimant from being able to perform past relevant work (20 CFR 404.1565).

9. The claimant was an individual of advanced age on April 24, 2007, the established disability onset date (20 CFR 404.1563).

10. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

11. The claimant does not have work skills that are transferable to other occupations within the residual functional capacity defined above (20 CFR 404.1568).

12. Since April 24, 2007, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

\* \* \*

13. The claimant was not disabled prior to April 24, 2007 (20 CFR 404.1520(f)), but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g)).

(Tr. 12-17.) On August 25, 2010, the Appeals Council denied Jacobs's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform his past relevant work; and

(5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's



decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Jacobs raises the following issues for judicial review:

I.  The treating physician's opinion regarding Paul Jacobs' residual functional capacity as of his alleged onset date November 7, 2005, should be given controlling weight.

II. The ALJ's determination of Paul Jacobs' residual functional capacity at the light level with no specific restrictions to the use of both of his hands is unsupported by substantial evidence.

(Pl.'s Br., ECF No. 6.)

## DISCUSSION

**A.  Treating Physician**

Jacobs first argues that the ALJ erred in not giving the opinion of Dr. Eric Hartvigsen, Jacob's treating physician, controlling weight. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2). However, "the rule does not require that the testimony be given controlling



weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

Jacobs argues that if Dr. Hartvigsen's opinion were given controlling weight, the limitations expressed in that opinion would preclude Jacobs from performing a full range of light work, and accordingly, Jacobs would be unable to perform his past relevant work as a salesperson. The ALJ does not specifically address the opinion of Dr. Hartvigsen in his order. His order states only that he has "considered the medical opinions of the claimant's treating physicians, evaluating physicians, and the state agency medical consultants." (Tr. 15.) Instead, the ALJ gave controlling weight for the period prior to April 24, 2007 to the opinion of Dr. Thomas Ewart, Jacobs's treating orthopedic surgeon, who reported that Jacobs had a "0% impairment of his shoulder as he did not have any limitations." (Id.) Dr. Ewart also opined that Jacobs's "mild weakness his right upper extremity did not impair any of his activities of daily living." (Id.) The ALJ found that Dr. Ewart's opinion was well supported by the weight of the evidence of record.[1] Additionally, the ALJ gave some weight

---

[1] The court observes that Dr. Ewart's opinion appears to focus primarily on Jacobs's limitations with regard to Jacobs's right shoulder rotator cuff injury and subsequent surgery. (See generally Tr. 411-26.) The record does not contain treatment notes from Dr. Ewart as to Jacobs's other existing limitations and Dr. Ewart does not appear to opine as to Jacobs's limitations with regard to his severe impairment of osteoarthritis.



to the state agency medical consultants, finding that their opinions were supported by the objective medical evidence of record.  (Id.)

Upon thorough review of the record as a whole, the briefs of the parties, and the ALJ's opinion, the court cannot say that the ALJ's failure to specifically address Dr. Hartvigsen's opinion is harmless error.  While some of the other evidence discussed by the ALJ may support discounting Dr. Hartvigsen's opinion, the ALJ failed to articulate any reasons for rejecting the opinion of Jacobs's treating physician.  Both parties, in summarizing the medical evidence, acknowledge that Dr. Hartvigsen began treating Jacobs in March 2004 and continued to treat him through the beginning of 2008.  Jacobs specifically directs the court to Dr. Hartvigsen's October 25, 2007 medical source statement in which Dr. Hartvigsen opined that, based upon Jacobs's severe osteoarthritis in his shoulder and knee, Jacobs was limited to occasional and frequent lifting of less than 10 pounds, limited to standing and walking less that 2 hours in an 8-hour workday, and limited in pushing and pulling in the upper extremities. (Tr. 357-57.)  Additionally, while Dr. Hartvigsen's assessment did not limit Jacobs's ability to sit, it noted that Jacobs was limited to occasional climbing, kneeling, crouching, crawling, and stooping and frequent balancing.  (Tr. 359.)  Dr. Hartvigsen also opined that Jacobs was limited to occasional reaching, handling, fingering, and feeling.  (Id.)  On March 3, 2008, Dr. Hartvigsen added a notation to the end of his October 25, 2007 medical source statement which stated that "[t]o a reasonable degree of medical certainty, the limitations addressed above existed on November 7, 2005, and have persisted to the present (3/3/2008)." (Tr. 393-96.)

The failure of the ALJ to address Dr. Hartvigsen's opinion prevents the court from determining that the ALJ's decision to discount Dr. Hartvigsen's opinion is supported by substantial



evidence and consistent with controlling law. Accordingly, while the court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]," Craig, 76 F.3d at 589, the court is constrained to recommend remanding this issue for further explanation and review of Dr. Hartvigsen's opinion.

B.  **Residual Functional Capacity ("RFC")**

Reconsideration of Dr. Hartvigsen's opinion may affect the ALJ's determination as to the subsequent steps of the sequential evaluation. Therefore, in light of the court's recommendation that this matter be remanded for further consideration, the court need not address Jacobs's remaining issue, as it may be rendered moot on remand. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

## RECOMMENDATION

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action as set forth above.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 24, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).